# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

MICHAEL DOLAN; and SHANA DOLAN,

    Plaintiffs,

      v.

AIR MECHANIX, LLC; and AUTO
OWNERS INSURANCE COMPANY,

    Defendants.

CIVIL ACTION NO.: 4:18-cv-157

## O R D E R

This is a declaratory judgment action brought by Shana and Michael Dolan ("the Dolans")

against Auto Owners Insurance Company ("Auto Owners") and its insured, Air Mechanix, LLC

("Air Mechanix"). Presently pending before the Court are the Dolans' Motion for Summary

Judgment, (doc. 23), and Air Mechanix's Motion to Dismiss, (doc. 25). Both motions have been

fully briefed by all parties, (see docs. 29, 31, 33, 36, 38). For the reasons described more fully

below, the Court **GRANTS** Air Mechanix's Motion to Dismiss, (doc. 25), and **GRANTS IN**

**PART** and **DENIES WITHOUT PREJUDICE IN PART** Plaintiffs Shana and Michael Dolan's

Motion for Summary Judgment, (doc. 23).

## BACKGROUND

### I.    Factual Background

The issues presented to the Court in this lawsuit relate to Auto Owners' handling of

payment on a judgment obtained by the Dolans against Auto Owners' insured, Air Mechanix, in a

prior lawsuit. (See generally Doc. 1-2.) In that prior suit (hereinafter the "damages suit"), filed in

the State Court of Chatham County, Georgia, the Dolans sought damages from Air Mechanix for bodily injury, repair, loss of contents and living expenses related to Air Mechanix's allegedly negligent installation of air conditioning ductwork at their home. (Id.; see also doc. 29-2.) In response, Auto Owners, which insured Air Mechanix pursuant to a commercial general liability ("CGL") policy, filed a declaratory judgment action in the Superior Court of Chatham County, Georgia, claiming that the CGL policy excluded coverage for certain claims asserted by the Dolans in the damages suit. The declaratory judgment action ultimately resulted in a ruling from the Georgia Court of Appeals regarding the types of damages that were covered by the CGL policy and certain other types of damages that were excluded from coverage or only covered to a limited extent.[1] See Dolan v. Auto Owners Ins. Co., 773 S.E.2d 789 (Ga. Ct. App. 2015).

In April 2016, a jury returned a verdict in the damages suit in favor of the Dolans and against Air Mechanix with a total damages award of $1 million. (Doc. 32, pp. 2–3; doc. 23-4.) The specific itemized damages awards comprising the $1 million total were as follows: $272,500.00 for bodily injury to Michael Dolan; $272,500.00 for bodily injury to Shana Dolan; $200,000.00 for the cost of repairs; $75,000.00 for loss of contents for Michael Dolan; $75,000.00 for loss of contents for Shana Dolan; and $105,000.00 for additional expenses. (Doc. 32, p. 3; doc. 23-4.) Judgment was entered on May 2, 2016. (Doc. 32, p. 3; doc. 23-5.) The verdict was later affirmed on appeal. See Auto Owners v. Dolan, 803 S.E.2d 104 (Ga. Ct. App. 2017), *cert. denied*, Air Mechanix, LLC v. Michael Dolan et al., Case No. S17C1946 (Ga. Jan. 16, 2018).

---

[1] The Georgia Court of Appeals specifically held that, pursuant to certain exclusions in and endorsements to the CGL policy, the Dolans were barred from recovering from Auto Owners for any damages award for bodily injury arising from mold contamination and were limited to a recovery under the policy of no more than $50,000 for any property damage arising out of a "fungi or bacteria incident." See Dolan, 773 S.E.2d at 793.

On February 7, 2018, Auto Owners (through counsel for Air Mechanix) delivered to counsel for the Dolans a check for $426,503.27 (the "February 7, 2018 check"). (Doc. 23-7; doc. 32, p. 4.) According to the cover letter accompanying the check, this amount "include[d] those items on the Special Verdict Form which were not mold related," as well as "the balance of the coverage under the mold limitation provision of the policy in the amount of $35,000 together with interest on the amount of the Judgment as allowed under Georgia law." (Doc. 23-7, p. 1.)

There is no dispute among the parties to this case that the check was intended as a payment of $382,500.00 of the $1 million judgment amount plus $44,003.27 in post-judgment interest (at a rate of 6.5% per annum on the $382,500.00 amount). (Doc. 32, p. 6.) There is also no dispute that $382,500.00 was the correct principal for the portion of the total judgment for which Auto Owners was responsible under the policy.[2] (See id.) Instead, the dispute which prompted the Dolans to file the lawsuit presently before the Court centers on whether Auto Owners calculated and included the proper amount of post-judgment interest (for which it was responsible) in the check. Auto Owners contends that $44,003.27 was the proper amount of post-judgment interest because, under the terms of the CGL policy and under Georgia law, it was responsible for the post-judgment interest that had accrued on *only* the portion of the judgment that it is obligated to pay. (Doc. 31, pp. 4–5.) The Dolans, on the other hand, claim that, pursuant to a specific provision in the CGL policy, Auto Owners was required to pay *all* of the post-judgment interest that had accrued on the *total* amount of the judgment (not just on the portion for which Auto Owners was responsible), an amount much higher than $44,003.27. (Doc. 23-1, pp. 3–5.) The Dolans did not negotiate the check upon receipt, choosing instead to file this lawsuit.

---

[2] There also appears to be no dispute between the parties that the proper interest rate is 6.5% per annum. (See, e.g., doc. 32, p. 6 (both parties use "6.5% per annum" as the interest rate in their calculations).)

## II.     Procedural Background

The Dolans originally filed this declaratory judgment action in the Superior Court of Chatham County, Georgia. (Doc. 1-2.) In their Complaint, the Dolans allege that Auto Owners "transmitted a partial payment of the Judgment as well as only a portion of the post-judgment interest that was due and owing to the Plaintiffs by Defendant's insurer [Auto Owners]." (Id. at pp. 3–4.) They claim that, pursuant to the policy, Auto Owners is responsible for the interest on the entire amount of the jury verdict award and they specifically seek "a judgment declaring that Defendant Auto Owners Insurance Company is responsible for the entire amount of post-judgment interest that is due upon the jury verdict award of $1,000,000.00." (Id. at pp. 4–5.) The Dolans also named Air Mechanix as a Defendant. (See generally id.)

Auto Owners, which is a not a citizen of Georgia, removed the case to this Court, claiming that the Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1441. (Doc. 1, p. 3.) In the Notice of Removal, Auto Owners acknowledged that both the Dolans and Defendant Air Mechanix are residents of Georgia, which typically would prevent this Court from exercising diversity jurisdiction over the case. (Id. at pp. 2–4.) Auto Owners argued, however, that Defendant Air Mechanix's citizenship should be disregarded by the Court because it was fraudulently joined in the action in an effort to defeat diversity jurisdiction and prevent removal of the case. (Id. at p. 4.) Without Air Mechanix as a Defendant, complete diversity would exist since Auto Owners, which would be the sole remaining Defendant, is not a citizen of Georgia.

The Dolans have not moved to remand the case back to the State Court. Quite to the contrary, they have filed a Motion for Summary Judgment, seeking an adjudication of the case by this Court. (Doc. 23.) The issue of whether the Court has jurisdiction, however, has been indirectly raised by Air Mechanix through a Motion to Dismiss in which it claims it has been

fraudulently joined in this action and that it should be dismissed due to the Dolans' failure to state a claim against it. (Doc. 25.) Surprisingly, despite their having sought an adjudication of the case on the merits by this Court (through their pending Motion for Summary Judgment), the Dolans oppose Air Mechanix's Motion to Dismiss notwithstanding the fact that, were they to prevail (thereby requiring Air Mechanix to remain in the case), the Court would have to remand the case to state court without ruling on the summary judgment motion. (See Doc. 33.)

In its Motion to Dismiss, Air Mechanix argues that the Dolans' Complaint, on its face, fails to state a claim for relief against it. (Doc. 25, p. 3.) It additionally argues that there is no possibility that the Dolans could state a claim against it through their Complaint because "[t]here is no set of facts under which Air Mechanix, LLC could be responsible for any payment of post judgment interest under the policy of insurance which was issued to it by Auto Owners Insurance Company." (Id.) Air Mechanix also notes that, in its Answer, it raised (as its second defense) the argument that "it had been improperly joined as a party Defendant." (Id. at p. 4.)

In their Response, the Dolans argue first that Air Mechanix's Motion to Dismiss is untimely and should therefore be denied. (Doc. 33, p. 3.) Next, they confusingly argue that Air Mechanix's Motion to Dismiss for failure to state a claim in *this* declaratory judgment action must be denied because the Dolans "have *already* been successful in their cause of action against [Air Mechanix] . . . [in] [t]he underlying [damages] lawsuit" and this lawsuit "is just a derivative of the underlying lawsuit, and [Air Mechanix] has shown no valid reason as to why Plaintiffs would not succeed." (Id. at p. 5.) Additionally, the Dolans claim that Air Mechanix "is a proper defendant" because "the crux of [the] [C]omplaint is whether one defendant and/or the other are responsible for post-judgment interest on the judgment." (Id.)

Before the Court can consider the Dolans' Motion for Summary Judgment asking the Court to make specific declarations as a matter of law, the Court must satisfy itself that it has subject matter jurisdiction to reach the merits of the case.

## DISCUSSION

### I.    Subject Matter Jurisdiction and Air Mechanix's Motion to Dismiss

"Diversity jurisdiction, as a general rule, requires complete diversity—every plaintiff must be diverse from every defendant." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994) (citations omitted). "As master of her own complaint, a plaintiff may join such claims and parties in a single suit as are permitted under the law and the Federal Rules of Civil Procedure. Of course, a plaintiff's decision to join a non-diverse party has repercussions for purposes of removal jurisdiction. However, a defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" Ferguson v. CitiMortgage, Inc., No. 1:13-CV-01373, 2014 WL 587865, at *2 (N.D. Ga. Feb. 14, 2014) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). Moreover, the Court must bear in mind that "federal courts are required to realign the parties in an action to reflect their interests in the litigation." City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313 (11th Cir. 2012) (citing City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941)). "[The] parties cannot avoid diversity by their designation of the parties." Id. "Rather, lower federal courts must look beyond the pleadings and arrange the parties according to their sides in a dispute, as determined by the 'principal purpose of the suit' and 'the primary and controlling matter in dispute.' Even where the parties are opposed outside of the subject action, parties with the same interests in the subject action must be aligned together." Pearson v. Catlin Specialty Ins. Co., No.

5:14-CV-60, 2015 WL 1224104, at *2 (S.D. Ga. March 17, 2015) (citing <u>Vestavia Hills</u>, 676 F.3d at 1313–14).

Here, Air Mechanix claims it has been fraudulently joined in this lawsuit because the Complaint does not state a claim for relief against it. To establish fraudulent joinder, "the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." <u>Stillwell v. Allstate Ins. Co.</u>, 663 F.3d 1329, 1332 (11th Cir. 2011) (citing <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1538 (11th Cir. 1997)) (bracketed text in original). This burden is a "heavy one." <u>Id.</u> (internal quotation marks omitted). "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." <u>Id.</u> at 1333 (citing <u>Crowe</u>, 113 F.3d at 1538). "This Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" <u>McKenzie v. King Am. Finishing, Inc.</u>, No. 6:12-cv-065, 2012 WL 5473498, at *3 (S.D. Ga. Nov. 9, 2012) (quoting <u>Stillwell</u>, 663 F.3d at 1334). "If there is even a possibility that a state court would find that the complaint states a cause of action the resident defendant, the federal court must find that joinder was proper and remand the case to state court." <u>Id.</u> (citation omitted). In contrast to the federal pleading standard, Georgia simply requires notice pleading. <u>See</u> O.C.G.A. § 9–11–8. Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain." <u>Carley v. Lewis</u>, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996); <u>see also</u> <u>Stillwell</u>, 663 F.3d at 1333 (all that is required to defeat a fraudulent joinder claim is "a possibility of stating a valid cause of action") (citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (1998)).

Examining the Complaint in the light most favorable to the Dolans, the Court concludes that the Complaint fails to state any claim against Air Mechanix, and thus does not give "fair notice" of a "short and plain" claim against it. The Complaint focuses on Auto Owners' responsibilities under the terms of the CGL policy. (See, e.g., Doc. 1-2, p. 4 ("[The Policy] does not have a limiting provision for *Auto Owners Insurance Company's responsibility* for post-judgment interest.") (emphasis added); id. ("Plaintiffs contend that *Auto Owners Insurance Company is responsible* for the interest on the entire amount of the jury verdict award.") (emphasis added); id. at p. 5 ("WHEREFORE, Plaintiffs . . . pray that this Honorable Court: a) enter a judgment declaring that *Defendant Auto Owners Insurance Company is responsible* for the entire amount of post-judgment interest that is due upon the jury verdict award of $1,000,000.00 . . . .") (emphasis added).)

The closest Plaintiffs come to alleging anything resembling a need for a declaration concerning Air Mechanix is in Paragraph 18 of the Complaint, which states: "There is an actual controversy between the parties concerning the obligations of the Defendants under the Auto Owners Insurance Company policy referred to herein." (Id. at p. 4.) This statement mirrors the Dolans' argument in their Response to Air Mechanix's Motion: that they need to know "whether one defendant and/or the other are responsible for post-judgment interest on the judgment." (Doc. 33, p. 5.) The Dolans' Complaint—and their summary judgment filings, for that matter—however, do not actually seek any sort of declaration regarding *Air Mechanix's* responsibility for post-judgment interest, but only seek a declaration regarding *Auto Owners'* responsibility under the terms of the CGL policy. Thus, under Georgia law, the Complaint did not provide Air Mechanix with "fair notice" that a declaration regarding its responsibility for post-judgment interest is being sought. The mere possibility that Air Mechanix may later be *affected* by the ruling

(for instance, if Auto Owners prevails in this action and the Dolans turn to Air Mechanix for payment of the unpaid interest) does not satisfy the requirement that the Dolans actually allege a cause of action and seek relief against Air Mechanix in the Complaint.

However, given Air Mechanix's status as the insured under the CGL policy and given the possibility that Air Mechanix could be affected by the Court's ruling in this case, the Court appreciates the Dolans' notion that Air Mechanix could be a proper *party* to the case. The fact that it is not a proper *defendant* per the allegations of the Dolans' Complaint does not necessarily mandate its dismissal from the case. The Court must examine whether Air Mechanix should remain in the case but be realigned as a co-plaintiff.

In determining how to proceed, the Court finds the Eleventh Circuit's opinion in <u>Vestavia Hills v. General Fidelity Insurance</u> instructive, as the underlying facts of that case are analogous to the underlying facts here. In <u>Vestavia Hills</u>, the plaintiff, Vestavia Hills, won a judgment in state court against Cameron. 676 F.3d at 1312. When Vestavia Hills sought to collect on the judgment, Cameron submitted a claim for coverage to its insurer. <u>Id.</u> When the insurer denied the claim, Vestavia Hills filed suit in state court against both the insurer and Cameron pursuant to an Alabama statute that provides a mechanism for a judgment creditor to reach insurance proceeds. <u>Id.</u> The insurer removed the case to the district court based on diversity jurisdiction. <u>Id.</u> Vestavia Hills filed a motion to remand based on the fact that both it and Cameron were Alabama citizens. <u>Id.</u> The district court denied the motion to remand and instead realigned Cameron as a plaintiff after determining that its interests aligned with those of Vestavia Hills, against the insurer, in that they both wanted to force the insurer to provide coverage. <u>Id.</u>

On appeal, the Eleventh Circuit concluded that "the district court did not err in realigning Cameron as a plaintiff and in refusing to remand this matter to state court." Id. at 1314. The court based its decision on the following considerations:

> Having reviewed the single-count complaint, it is clear that Vestavia Hills did not seek any relief from Cameron. There no longer is any dispute between Vestavia Hills and Cameron, and the only thing that Cameron could want out of this case is for Vestavia Hills to win. Obviously, the two parties' interests are identical or at least materially so. As was noted by the Seventh Circuit in Home Insurance Co. of Illinois v. Adco Oil Co., 154 F.3d 739, 741 (7th Cir. 1998), in determining subject matter jurisdiction on the basis of diversity, "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."

Id.

Similarly to Vestavia Hills, here, given the fact that a judgment has already been awarded to the Dolans against Air Mechanix, there is no longer any dispute between the Dolans and Air Mechanix, and, assumedly, "the only thing that [Air Mechanix] could want out of this case is for [the Dolans] to win," Vestavia Hills, 676 F.3d at 1314, so that Auto Owners is on the hook for a larger share of the total accrued interest (leaving a smaller share of the interest for which the Dolans may claim Air Mechanix is responsible).[3]

Quite to the contrary, however, Air Mechanix appears to side with Auto Owners on this issue, arguing that Auto Owners is responsible for a smaller portion of the accruing interest than the Dolans claim. (See, e.g., Doc. 29, pp. 6–7 (arguing that "the amount of interest which has been paid [by Auto Owners] through February 7, 2018 [(i.e., only the interest that had accrued on $382,500.00 of the $1 million)] was correct and constituted a full tender of *the interest* and amounts *owed by Auto Owners Insurance Company* under the subject policy") (emphasis added).) While one would expect the Dolans' interests and Air Mechanix's interests in this action to be "identical

---

[3] Indeed, this principle from Vestavia Hills provides support for the Court's above determination that Plaintiff does not assert a viable claim against Air Mechanix.

or at least materially so," id., making realignment necessary, in light of Air Mechanix's stated position, the Court is reluctant to realign Air Mechanix so that it is a co-Plaintiff in this declaratory judgment action. Notably, Vestavia Hills does not provide guidance on this particular issue because, in that case, the allegedly fraudulently-joined defendant-insured had not filed a motion to dismiss; rather, the district court had realigned the defendant-insured in response to (and in lieu of granting) the plaintiff's motion to remand for lack of subject matter jurisdiction. 676 F.3d at 1312. There also was no indication in the opinion that Cameron (the defendant-insured) had in any way appeared to side with its insurer on any of the underlying issues.

The Court cannot ignore Air Mechanix's statements indicating that—for whatever reason—Air Mechanix sides with Auto Owners on the issue of what portion of the accrued interest Auto Owners must pay. As a result, the Court declines to realign Air Mechanix as a co-Plaintiff and instead **GRANTS** Air Mechanix's Motion to Dismiss. With Air Mechanix no longer in this case, diversity jurisdiction exists between the remaining parties and the Court may proceed with considering the Dolans' Motion for Summary Judgment.

## II.     Motion for Summary Judgment

### A.     Standard of Review

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(a)). This case involves a matter of contract interpretation, which is a question of law for the court. O.C.G.A. § 13–2–1; see also Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998). Because contract interpretation is a matter of law for the court, "contract disputes are particularly well suited for adjudication by summary judgment." Michna v.

Blue Cross & Blue Shield of Ga., Inc., 653 S.E.2d 377, 379 (Ga. Ct. App. 2007). Absent an ambiguity that cannot be negated by a court's application of the statutory rules of construction, issues regarding a contract's interpretation may be resolved at summary judgment. Kusuma v. Metametrix, Inc., 381 S.E.2d 322, 323 (Ga. Ct. App. 1989).

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, see Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, where the record could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Generally, "[o]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" United States v. $183,791.00 in United States Currency, 391 F. App'x 791, 794 (11th Cir. 2010) (citation omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [ ] must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). Mere "metaphysical doubt as to the material facts" will not suffice. Matsushita, 475 U.S. at 586. "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." Maddox-Jones v. Bd. of Regents of Univ. of Ga., 448 F. App'x 17, 19 (11th Cir. 2011).

**B.      Relevant Policy Provisions**

The parties agree that Auto Owners' post-judgment interest obligation is governed by a provision entitled "SUPPLEMENTARY PAYMENTS – COVERAGES A AND B." (Doc. 23-3, p. 27.) That provision states, in pertinent part:

> If Coverage **A** or **B** apply, we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> . . .
>
> 7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of judgment that is within the applicable limit of insurance.

(<u>Id.</u> (at times referred to as "Item 7").)

According to the policy, "Coverage A" concerns "Bodily Injury and Property Damage Liability." (<u>Id.</u> at p. 17.) With regard to Coverage A, the policy provides, in pertinent part, that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . But:
>
> > (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance.

(<u>Id.</u>)

Similarly, as to "Coverage B," which concerns "Personal Injury and Advertising Injury Liability," the policy provides, in pertinent part, that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. . . . But:
>
> > (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance.

(<u>Id.</u> at p. 23.)

Though it does not explicitly say so, Auto Owners appears to concede that Coverage A applied here, though (undisputedly) only to part of the total judgment amount. (See Doc. 31, p. 4 ("Under the clear and unambiguous terms of the policy, the Supplemental Payments coverage for interest on a judgment only triggers 'if Coverage A or B apply.' The only coverage at issue here is Coverage A – Bodily Injury and Property Damages Liability, wherein Auto Owners agrees to 'pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" *to which this insurance applies*.'").) Auto Owners' position is apparently that, because "only part of the judgment was covered under the policy," it is not—and never has been—required to pay interest on anything more than that part of the judgment to which Coverage A applies. (Doc. 32, p. 8.) Put another way, Auto Owners purports that because Coverage A applied to only *part* of the judgment, Auto Owners does not actually have to pay "[a]ll interest on the full amount of any judgment that accrues" during the stated time period, (see doc. 23-3, p. 27), but instead only interest on that portion of the judgment to which Coverage A applies. (See Doc. 31, pp. 4–5 ("Thus, as is clear from the policy terms, the insurance must first apply before any obligation to pay interest triggers. The insurance indisputably does not apply to the entire judgment, and thus the interest obligation is not triggered on the entire judgment." (legal citations omitted)).) Pointing to the fact that the February 7, 2018 check included the amount of interest that had accrued on the portion of the judgment for which it was responsible, Auto Owners claims that it has satisfied its obligation under Item 7 of the Supplemental Payments provision.

### C. The At-Issue Provision Unambiguously Requires Auto Owners to Pay All Interest that Accrues on the Entire Judgment Amount until It Undertakes One of the Payment-Related Actions Specified in Item 7

In Georgia, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d

923, 925 (Ga. Ct. App. 2012).[4]  When "construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other."  York Ins. Co. v. Williams Seafood of Albany, Inc., 544 S.E.2d 156, 157 (Ga. 2001).  "Any ambiguities in [an insurance policy] are strictly construed against the insurer as drafter of the document."  Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983).  However, if the terms are unambiguous, "their plain meaning will be given effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured."  Payne v. Twiggs Cty. Sch. Dist., 496 S.E.2d 690, 691–92 (Ga. 1998).

Under Georgia's contract construction methodology, the first question is whether the terms contained in the Supplemental Payments provision are unambiguous.  "Where the contractual language is explicit and unambiguous, 'the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'"  Jones v. Golden Rule Ins. Co., 748 F. App'x 861, 864 (11th Cir. 2018) (quoting Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016)).  In determining whether the relevant terms are unambiguous, the Court looks to the text of the at-issue provision.  Smith, 784 S.E.2d at 424.

The at-issue portion of the "Supplemental Payments" provision of CGL policy here explicitly states that "[i]f Coverage A or B apply, [Auto Owners] will pay . . . *[a]ll* interest on the *full amount* of any judgment that accrues after entry of the judgment" until one of the specified payment-related activities occurs.  (Doc. 23-3, p. 27 (emphasis added).)  Auto Owners concedes that Coverage A applied here, but it nonetheless insists that it is not required to pay *all* interest on the *full* amount of the judgment as the provision states but is only required to pay interest on the portion of the judgment to which its coverage applies.

---

[4] The parties only cite to Georgia law in support of their respective substantive arguments and, thus, apparently agree that Georgia law applies in this diversity action.

The Court finds that the at-issue text of the Supplemental Payments provision cannot be read to include the type of limitation that Auto Owners proposes. A plain reading of the provision makes clear that Auto Owners agreed that, where it is obligated to pay a "sum[] that the insured becomes legally obligated to pay as damages" for the type of injuries and/or damages described under the "Coverage A or B" sections of the policy, it will also be responsible for all interest that accrues on the full amount of the judgment until it completes one of the payment-related activities listed in Item 7. To find otherwise would require the Court to divert from the natural reading of the at-issue Supplemental Payments provision, which the Court is neither willing nor able to do.

If Auto Owners wanted to limit the interest for which it is responsible to the amount of interest accruing only on the covered portion of the judgment amount, it could and should have said so expressly, in clearer, more unequivocal language than that which the provision presently contains. The lead phrase "[i]f Coverage A or B apply" simply does not place a limitation on the amount or type of interest for which Auto Owners will be responsible. Instead, the phrase operates as a qualifier, or a condition precedent, explaining that Auto Owners' obligation to make the types of payments listed as Items (1) through (7) arises *only if* Coverage A or B apply, and the type of payment at issue here is specified in Item (7): "*All* interest on the *full amount* of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of judgment that is within the applicable limit of insurance." (Doc. 23-3, p. 27 (emphasis added).) Put another way, the phrase limits only *when* Auto Owners' responsibility for any of the seven payment items is triggered: when Coverage A or B apply.

The Court's plain-meaning reading is consistent with the way Georgia courts have dealt with similar post-judgment interest provisions in insurance contracts. In Southeast Atlantic Cargo Operators, Inc. v. First State Insurance, 456 S.E.2d 101 (Ga. Ct. App. 1995), and in Southern

General Insurance Co. v. Ross, 489 S.E.2d 53 (Ga. Ct. App. 1997), both of which Plaintiffs rely upon heavily in their summary judgment briefing, the Georgia Court of Appeals found, based on a plain reading of similar supplemental payment provisions, that the insurers had obligated themselves to pay interest on the full amount of the judgment until the applicable policy limits were paid, tendered, or deposited in court.

In Southeast Atlantic Cargo Operators, the Georgia Court of Appeals addressed a provision entitled "Supplementary Payments," which provided that the insurer would pay, in addition to the applicable policy limits amount, all interest on the entire amount of any judgment. 456 S.E.2d at 103. The court referred to this provision as a "standard interest clause" and noted that "it is the intent of the 'standard interest clause' that the insurer will pay interest on the entire amount of the judgment until policy limits are paid or tendered or deposited in court." Id. at 103–04. The court explained that, "[t]he modern and prevailing view in jurisdictions across the country is that since the primary insurer controls the litigation, both on appeal and at trial, it is both proper and fair to place upon the primary insurer the burden of all interest accruing during that time." Id. The court also noted that its reading of the provision "comports with common sense" because "[a]n insurer may avoid the obligation to pay post-judgment interest on the entire amount of the judgment by paying, or at least tendering, the judgment prior to appeal." Id. at 104.

Two years later, in Ross, the Georgia Court of Appeals addressed another provision which is even more similar to the provision at issue here. 489 S.E.2d 53. The provision at issue in Ross read, in relevant part: "*With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability*, the company shall: . . . (2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and *all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such*

*judgment as does not exceed the limit of the company's liability thereon.*"  489 S.E.2d at 55 (first

area of emphasis added; omission in original).  The insurer argued that this policy language

required it to pay post-judgment interest only on the amount of the judgment covered by its policy

limits, and not on the full amount of the judgment.  Id. at 56.  The Georgia Court of Appeals

rejected this argument, holding that "[t]he plain language of the policy states that [the insurer] will

pay '*all interest* accruing after entry of judgment.'"  Id.  The court emphasized that the provision

"states that [the insurer's] duty to pay interest abates when the company has paid 'such part of the

judgment *as does not exceed the limit of the company's liability thereon*,'" and that the fact that the

insurer did not use this latter language to also qualify the payment of post-judgment interest would

lead a reasonable person to conclude the insurer would pay interest on the entire judgment.  Id.

The court also noted that "authority shows a majority of [other] jurisdictions would find this

language requires an insurer to pay interest on the entire judgment," and the court cited a number

of such opinions from other states.  Id.; see also Safeway Ins. Co. of Ala., Inc. v. Amerisure Ins.

Co., 707 So.2d 218, 222 (Ala. 1997) (collecting cases from around the country that "have

addressed the issue [and] have held the insurer liable for interest on the entire judgment").

        Much like the provision in Ross, the provision at issue here states that Auto Owners' duty

to pay interest abates when it has paid "the part of judgment that is within the applicable limit of

insurance."  (Doc. 23-3, p. 27.)  The logic of the Ross court and the fact that Auto Owners did not

use language to qualify the amount of post-judgment interest it must pay supports a conclusion

that Auto Owners obligated itself to pay the interest on the entire judgment.  See 489 S.E.2d at 56.

Additionally, Auto Owners has not presented any evidence indicating that the same justifications

listed by the Southeast Atlantic Cargo Operators court for its reading of the provision there (i.e.,

the insurer controls the litigation and can cut off the accrual of interest by paying or tendering the policy limits amount) should not apply in this case.

In light of all the foregoing, the Court **GRANTS** the Dolans' Motion for Summary Judgment to the extent that it seeks a declaration that, pursuant to the terms of the CGL policy and Georgia law, Auto Owners is responsible for paying *all* of the post-judgment interest accruing on the full amount of the judgment between the time that judgment was entered and the time that Auto Owners has paid, offered to pay, or deposited in court the portion of the judgment for which it is responsible (as opposed to only the amount of post-judgment interest accruing during the same time period on that portion of the judgment for which Auto Owners is responsible). Put another way, the pertinent contractual provisions require Auto Owners to pay all interest that accrues on the entire judgment amount until Auto Owners undertakes one of the payment-related actions specified in item 7 of the Contract.

### D. The Court Declines to Address Whether Delivery of the February 7, 2018 Check was an Effective "Tender," thereby Terminating the Accrual of Interest for which Auto Owners is Responsible

In their Motion for Summary Judgment, the Dolans also ask the Court to issue a declaration that "Defendants have not effectuated a proper 'tender' upon Plaintiffs to date" and, therefore, "post-judgment interest on the amount of the full judgment has been continuing (and will continue until 'tender' occurs) as a matter of law." (Doc. 23-1, pp. 13–14.) The Dolans claim that the February 7, 2018 delivery of the check did not constitute "tender" because it was not for the full amount for which Auto Owners was responsible (since it did not include the proper amount of post-judgment interest) and also because conditions were imposed upon their negotiation of the check. (Id. at pp. 10–13.) Specifically, in the Dolans' own words, they claim that the tender was "conditioned . . . on the requirement for an accord and satisfaction upon negotiation with a built-in condition that Plaintiffs accept an amount that is less than full payment as the check tendered

excludes the remaining pre-judgment interest on the $1,000,00 award which Defendant is contractually obligated to pay." (Id. at pp. 12–13.) They also claim that the tender was conditioned on their "forfeiting their rights to future recovery of the pending actions/motions, the full interest owed, and the right to future appeal." (Id. at p. 13.)

In its Response, Auto Owners devotes only one paragraph to this issue, wherein it states that, "[u]nder clear terms of the policy, interest is abated when Auto Owners has paid, *offered to pay*, or deposited in court the part of judgment that is within the applicable limit of insurance," and that it is undisputed that Auto Owners delivered a check for "the covered part of the judgment, with interest." (Doc. 31, p. 6.)

The Dolans filed a Reply, to which they attached as an exhibit a chain of emails exchanged between counsel for the parties regarding whether the Dolans had the right to cash the check without waiving any arguments they have presented in this lawsuit. (Docs. 38, 38-1.) The Dolans argue that these emails show that, only a few days before the Dolans' Reply was filed, "the Defendants finally agreed to remove conditions associated with negotiation of the previously transmitted check," and that, prior to that date, "Defendants have clearly always conditioned the negotiation of the check, thus failing effective tender." (Doc. 38, p. 2–3.) Plaintiffs do not make clear what parts of these emails support their arguments, however. They also do not comment on whether or how the recent "remov[al] of the conditions" (and any other discussions reflected in the email chain) may (or may not) have affected the propriety of the specific declaration they requested in their Motion for Summary Judgment.

The shortcomings of the parties' briefing on this issue aside, the Court is most concerned about the fact that the Dolans' *Complaint* did not contain any allegations regarding concerns about the effectiveness of, and any implications resulting from, the delivery of the February 7, 2018

check, much less did it request any sort of declaration from the Court on this topic. The Dolans have never sought leave to amend their Complaint to add a request for declaratory relief on this topic. To raise this claim for declaratory relief, the Dolans needed consent or leave to amend pursuant to Federal Rule of Civil Procedure 15(a). They cannot raise this claim for the first time in their summary judgment filings. As the Eleventh Circuit has explained:

> In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) the Supreme Court has mandated a liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a). This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. Indeed, the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Id. Efficiency and judicial economy require that the liberal pleading standards under Swierkiewicz and Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).

Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314–15 (11th Cir. 2004). See also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) (holding that plaintiff must amend the complaint before raising a claim at summary judgment); Scott v. Nutter, No. 1:09-CV-1563-RWS-ECS, 2010 WL 11647225, at *3 (N.D. Ga. May 28, 2010) ("Plaintiff is not allowed to raise various claims of fraud, which were not raised in her complaint, in her motion for summary judgment."); Harris v. Atlanta Indep. Sch. Sys., No. 1:07-CV-2086-RWS/AJB, 2009 WL 10665027, at *2 n.2 (N.D. Ga. Aug. 9, 2009) ("Plaintiff's civil complaint never raised a claim under Title IX. As a result, Plaintiff cannot raise this claim for the first time [in his own motion for] summary judgment."); Belser v. City of Decatur, No. 1:06-CV-1454-TCB/AJB, 2007 WL 9701528, at *6 (N.D. Ga. Dec. 12, 2007) ("Plaintiff therefore cannot raise [new] claims in her motion for summary judgment."), report and recommendation adopted sub nom. Belser v. City of Decatur Police Dep't, No. 1:06-CV-1454-TCB, 2008 WL 11406005 (N.D. Ga. Jan. 7, 2008). Additionally, given the agreements the parties apparently reached, as reflected in the emails they

exchanged *after* Auto Owners filed its Response, the Court has reservations about whether the parties' initial arguments on this issue remain relevant and also whether declaratory relief on this issue is even necessary and appropriate at this point.

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** the Dolans' Motion for Summary Judgment as to their request for a declaration that "Defendants have not effectuated a proper 'tender' upon Plaintiffs to date" and, therefore, "post-judgment interest on the amount of the full judgment has been continuing (and will continue until 'tender' occurs) as a matter of law." (Doc. 23-1, pp. 13–14.) However, since the Dolans themselves moved for summary judgment and since Auto Owners did not object to the fact that this declaration was not specifically addressed and requested in the Complaint, the Court will give the Dolans an opportunity to attempt to amend their Complaint as permitted by the Federal Rules of Civil Procedure and this Court's local rules, with the specific deadlines set forth below.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Air Mechanix, LLC's Motion to Dismiss, (doc. 25). The Court **DIRECTS** the Clerk of Court to **TERMINATE** Air Mechanix as a party on the docket of this case. The Court also **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** Plaintiffs Shana and Michael Dolan's Motion for Summary Judgment, (doc. 23).

The Court **ORDERS** that, if the Dolans still wish to pursue a declaratory judgment on the claim discussed in "Discussion" Subsection II.D. above, they must file a motion for leave to amend within **FOURTEEN (14) DAYS** of the entry of this Order.[5] If the Dolans file a motion for leave to amend, Auto Owners will have **FOURTEEN (14) DAYS** from the date of service of such

---

[5] This is *not* an opportunity for the Dolans to seek to amend to add any claims outside the scope of the dispute discussed in "Discussion" Subsection II.D above.

motion to file a response thereto. Should the Court grant the Dolans leave to amend, the Court will set a schedule for Auto Owners to answer Plaintiff's amended complaint and for the parties to file dispositive motions in its order granting leave to amend. The Court advises the parties, however, that—in the event any such motions are filed—they would serve themselves well to present clearer explanations, arguments, and legal support than they did in the briefing currently before the Court.

**SO ORDERED**, this 22nd day of July, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA